**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

BRENDA KREH,

    Plaintiff,

*v*.                                              CASE NO. 07-CV-15023

COMMISSIONER OF                      DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,                        MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. **REPORT**

### A. **Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 15.)

Plaintiff was 52 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 4 at 16, 62.) Plaintiff's relevant employment history consisted of work as a medical records coder for five years, a bartender for three years, a medical office receptionist for three years, a factory worker for one year, and a nurse's aide for two years. (Tr. at 78.)

Plaintiff filed the instant claim on April 6, 2004, alleging that she became unable to work on December 2, 1996. (Tr. at 16, 62.) The claim was denied initially and upon reconsideration. (Tr. at 24.) In denying Plaintiff's claim, the Defendant Commissioner considered disorders of the back (discogenic and degenerative) as possible bases of disability. (*Id.*)

On February 2, 2007, Plaintiff appeared, via interactive video conference, with counsel before Administrative Law Judge ("ALJ") Larry B. Parker who considered the case *de novo*. In a decision dated February 15, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 13-20.) Plaintiff requested a review of this decision on February 22, 2007. (Tr. at 9-10.)

The ALJ's decision became the final decision of the Commissioner when, on September 28, 2007, after the review of an additional exhibit – representative's contentions dated July 9,

2007[2] (AC-1, Dkt. 4, Tr. at 222-25) – the Appeals Council denied Plaintiff's request for review. (Tr. at 6-8.) On November 27, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

---

[2] In this Circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, because district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, this Court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

3

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. "The

substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). *Accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" is defined as follows:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v) and 416.920(g)).

D.     Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff sought treatment with Henry Mendoza, M.D., from 1997 to 1998. (Tr. at 137-74.) After complaints of increasing pain, Plaintiff underwent an MRI which showed a "[l]arge herniated disc at the C5-C6 level on the left extending caudally with moderate compromise of the thecal sac" and "uncinate process hypertrophy with mild compromise of the thecal sac at C3-C4 on the left." (Tr. at 151.)

Plaintiff then sought treatment with Rodolfo Uy Ham, M.D., who also saw Plaintiff in December 1997. Due to Plaintiff's indication that she "was unable to tolerate her symptoms," he recommended an anterior cervical disc excision and fusion. (Tr. at 153.) Dr. Ham performed successful anterior cervical disc excision and fusion surgery on Plaintiff that same month. (Tr. at 156-58.) In January 1998, Dr. Ham noted that Plaintiff's range of motion and strength was good in both upper extremities and that the surgical bone graft was "in good position and cervical alignment is maintained." (Tr. at 160.) As a result, Dr. Ham indicated he did "not know why she is still having the residual pain" so he indicated he would send Plaintiff for more tests. (*Id.*) Diagnostic images taken in January 1998 were normal (Tr. at 161) and an MRI showed "no evidence of a herniated disc or stenosis." (Tr. at 162.) An MRI later that month showed no issues at the C7-T1 level which a Dr. C.S. Sweet had identified as a potential issue. (Tr. at 163-64.)

In February 1998, Plaintiff still complained of symptoms in her left arm although all tests showed the issues were "all corrected," so Dr. Ham sent Plaintiff for physical therapy. (Tr. at 165.) Plaintiff underwent physical therapy. (Tr. at 166-67.) She was discharged approximately 6 months later with a notation that "treatment goals were almost fully met." (Tr. at 167.)

In March 1998, Dr. Ham noted that Plaintiff had "good strength in both upper extremities" and that the fusion was successful. (Tr. at 171.) Diagnostic imaging showed the "vertebral alignment and prevertebral soft tissues are unremarkable." (Tr. at 172.)

By May 1998, Dr. Ham noted the continued successful fusion and that he did "not find any definite evidence of a surgically correctable neurological problem," so he discharged Plaintiff from his care. (Tr. at 173.)

Six months after the expiration of her insured status, in June of 2000, Plaintiff saw a different neurosurgeon, Mokbell K. Chedid, M.D., who performed a successful C6-C7 anterior cervical discectomy on Plaintiff that same month. (Tr. at 182-87.) An EMG taken in November 2001 was "essentially normal," finding "no electrodiagnostic evidence of lumbrosacral radiculopathy or plexopathy of both lower extremities" and [n]o evidence of diffuse peripheral neuropathy or mononeuropathy of both lower extremities." (Tr. at 188.)

A physical Residual Functional Capacity ("RFC") Assessment conducted in June 2004 concluded that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, could stand and/or walk for 6 hours in an 8-hour workday, could sit for 6 hours in an 8-hour workday, and that her ability to push or pull was unlimited. (Tr. at 193.) Plaintiff was viewed as frequently limited in postural areas such as climbing, balancing, kneeling, and crouching, but showed no limitations in the manipulative, visual or communicative areas. (Tr. at 195-96.) The only environmental limitation noted regarded fumes and odors. (Tr. at 196.)

E.   **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision and that Plaintiff met the insured status requirements only through December 31,

1999. (Tr. at 18.) At step two, the ALJ found that Plaintiff's "chronic back pain, headaches, and bulging discs" were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could perform her previous work as a record technician.[3] (Tr. at 19.) Thus, the ALJ found Plaintiff was not disabled. (Tr. at 20.)

### F. Analysis and Conclusions

#### 1. Legal Standards

In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(c)(1)(B)(i). It is improper for an administrative law judge to concentrate on a claimant's abilities and condition at the date of hearing, rather than during the time period when the plaintiff met the special earnings requirements. *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). *See also Mohr v. Bowen*, No. 87-1534, 1988 WL 35265, at *2 (6th Cir. April 21, 1988). In this circuit, to qualify for social security disability benefits, disability must be proven to exist during the time the plaintiff was insured within the meaning of the special insured status requirements of the Act; if the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). Thus, as a general rule, the only

---

[3]Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform light work. (Tr. at 18.)

9

medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.

In *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), the court held, however, that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." *Id*. at 1354. Directly on point, the Sixth Circuit held in *Higgs*, 880 F.2d at 863, that the Commissioner must consider medical evidence of a claimant's condition after his date last insured to the extent that the evidence is relevant to the claimant's condition prior to the date last insured.

In this case, after review of Plaintiff's social security earnings record (Tr. at 65-72), the ALJ concluded that Plaintiff's insured status ended on December 31, 1999. (Tr. at 19.) This was the last quarter in which Plaintiff had 20 quarters of coverage within a 40-quarter period. 20 C.F.R. § 404.130(b). This conclusion regarding the date Plaintiff's insured status ended is uncontested.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the ALJ failed to properly evaluate the medical records and thus, formed an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Dkt. 10 at 6-9.) Specifically, Plaintiff complains that the hypothetical did not account for Plaintiff's pain and headaches which "both surgeons said" "probably" arose from her herniated disc at C-3, C-4. (Dkt. 10 at 7.) The ALJ did not find Plaintiff's symptoms completely without foundation; the ALJ found that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms but he also found that her statements as to the intensity, duration, and limiting effects of the symptoms were not entirely credible. (Tr. at 19.)

Under the test set forth in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), "[f]irst the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at 853. If there is, Plaintiff is not required to establish objective evidence of the pain itself but the court will examine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Felisky,* 35 F.3d at 1038-39.

The ALJ in the instant case indicated that "the record is without reports of symptoms, signs or findings compatible with greater limitations . . . . The claimant does not exhibit nerve root impingement, and remained neurologically and electrodiagnostically intact. No physician of record has opined greater limitations than I find . . . ." (Tr. at 19.) The ALJ also noted that treatment records "cover the period from December 1996 until May 1998, prior to the alleged onset date, and do not again commence until April 2000, after the expiration of the claimant's insured status." (*Id.*) I suggest that the ALJ considered and properly concluded that Plaintiff's subjective

11

complaints were not consistent with the medical evidence and that Plaintiff's condition was not so severe that it could be expected to produce disabling pain.

Plaintiff also argues that Defendant erred by failing to give Plaintiff a full and fair hearing. (Dkt. 10 at 9-11.) Plaintiff notes that the hearing lasted approximately fifty minutes but complains that due to malfunctioning teleconferencing equipment and interruptions by the ALJ, Plaintiff was denied the opportunity to fully inquire whether Plaintiff "medically equals" any of the listings. (Dkt. 10 at 10-11.)

"The Social Security Act gives those claiming disability benefits a right to a hearing in which witnesses may testify and evidence may be received." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). *See also Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1051 (6th Cir. 1983.) "Although the hearing is informal in nature, due process requires that any hearing afforded claimant be full and fair." *Id.* Although Plaintiff complains of the manner in which the ALJ interjected himself and moved the testimony along, Plaintiff has not pointed to any specific questions or evidence that she was not able to address due to the ALJ's rather tight schedule on the day of the hearing. (Dkt. 10 at 10-11.) Nor does Plaintiff claim that the ALJ was biased. Plaintiff's generalized discontent with the way the hearing was conducted is insufficient to show the hearing was less than full and fair. I suggest that the ALJ's decision reveals that the evidence was fully considered and the appropriate legal standards were followed and thus, that there was not denial of a full and fair hearing. *Despins v. Comm'r of Social Security*, 257 Fed. App'x 923, 931 (6th Cir. 2007) (finding the ALJ properly considered the totality of the record despite Plaintiff's characterization that the ALJ "improperly truncated the hearing and 'cherry picked' and 'hop scotched' through the record.").

Finally, Plaintiff argues that Defendant erred as a matter of law by failing to follow Social Security Rule (SSR) 00-4p, which requires the ALJ to ask the Vocational Expert ("VE") if the evidence conflicts with information provided in the Dictionary of Occupational Titles ("DOT"). (Dkt. 10 at 12.) SSR 00-4p is titled "resolving conflicts in occupational information," and is for use "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT." Defendant contends that since the ALJ found that Plaintiff could perform her past relevant work as it was actually and is generally performed there is was no need to consult the DOT. (Dkt. 15 at 15; Tr. at 19-20.) As Defendant also noted, Plaintiff has not alleged that there is any conflict between the VE's testimony and the DOT. (Dkt. 15 at 15-16.) I suggest that here, where there is no unresolved conflict, the ALJ's failure to ask the VE whether his testimony is consistent is not reversible error or even error requiring remand. *See Rowe v. Astrue*, No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ky. Apr. 10, 2008) (unpublished) (where hypothetical accurately reflected plaintiff's limitations and ALJ was unaware of any conflict, ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, No., 2008 WL 819073, at *15-16 (S.D. Ohio Mar. 25, 2008) (unpublished) (where question posed to VE accurately reflected plaintiff's limitations, plaintiff's contention that ALJ erred in failing to inquire into possible conflicts was without merit).

I further suggest that the ALJ's findings follow the opinions of the VE, which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by all the treating and examining physicians. (Tr. at 136, 147-50, 152-54, 156-57, 159-62, 165-69, 171-75, 177-79, 182-83, 186-88.) I further find support in Plaintiff's description of her daily activities in November of 2004, i.e., that she cooks, cares for her daily grooming needs, walks around the yard,

does dishes, watches television, reads, visits with her family and neighbors, and was able to travel to Houghton Lake to have lunch with a friend. (Tr. at 125-27.)

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. On this record, I suggest that the ALJ properly included all the limitations supported by medical evidence and properly chose not to include Plaintiff's own subjective conclusions as to the degree of pain she endures or the subjective conclusion that she is unable to do any work at all.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596

(6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ *Charles E. Binder*<br>CHARLES E. BINDER

Dated: September 11, 2008                                                 United States Magistrate Judge

**<u>CERTIFICATION</u>**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet l. Parker, Mikel E. Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge Borman in the traditional manner.

Date:  September 11, 2008                   By      s/Patricia T. Morris<br>
                                                                   Law Clerk to Magistrate Judge Binder